481 So.2d 76 (1986)
Mary SHIPP, Appellant,
v.
STATE of Florida WORKERS' COMPENSATION TRUST FUND, Appellee.
No. BD-233.
District Court of Appeal of Florida, First District.
January 3, 1986.
John A. Lloyd, Jr., St. Petersburg, for appellant.
Michael J. Rudicell, Florida Dept. of Labor and Employment Sec., Tallahassee, for appellee.
ZEHMER, Judge.
Claimant, Mary Shipp, appeals the deputy commissioner's order denying her claim for additional weekly compensation benefits (supplemental benefits) under section 440.15(1)(e)1, Florida Statutes (1981). We affirm.
Claimant suffered a compensable injury on February 7, 1970, and remained crippled from that date. In 1978, she was accepted by the employer and carrier as being permanently and totally disabled, retroactive to May 30, 1975. Thereafter, in 1982, claimant and the employer and carrier reached agreement for the lump-sum payment of compensation and medical benefits. Medical benefits were the subject of a written "Joint Petition Stipulation" filed with the deputy, which reads in part:
It is, therefore, specifically stipulated and agreed by and between the parties that the sum of $3,000.00 is a reasonable commutation of future medical expenses to be paid by the Employer and/or Carrier to the Employee to satisfy any and all claims she might have in the future for medical treatment as a result of the accident and injury out of which this claim arose. The Employee and Employer *77 and/or Carrier hereby file application and joint petition for lump sum payment of the commuted future medical expenses under the provisions of Section 440.20(10) of the Florida Workers' Compensation Act.
The Employee is represented by Attorney John A. Lloyd, Jr., and has had full and complete advice concerning the applicability and effect of the law involved in the instant stipulation and settlement of any future medical expenses to which she might be entitled. The Employee specifically stipulates that she fully intends for this to be a full and final settlement of her claim under the Florida Workers' Compensation Act for medical expenses.
The parties further stipulate and agree that for purposes of this Stipulation, the Amendments to Florida Statutes 440.20(10) shall be considered procedural and not substantive and shall have full force and effect at the present time and at any time in the future in relation to the instant claim; that this settlement for medical expenses is a final one; and that any Order entered hereon shall not be subject to a Petition for Modification under Section 440.28 of the said Act. It is specifically stipulated and agreed that the facts and circumstances set forth herein shall be the basis of an Order to be entered by the Deputy Commissioner finally concluding the claim of the Employee by lump sum settlement of her future medical expenses under the Florida Workers' Compensation Act and the same circumstances and facts set forth herein are stipulated to apply in the event of a Petition for Modification.
Upon payment by the Employer and/or Carrier to the Employee of the sum of $3,000.00 representing commuted future medical expenses in accordance with the terms of this Joint Petition Stipulation, this claim of the Employee for future medical expenses shall be deemed fully paid, satisfied and extinguished within the provision of the Florida Workers' Compensation Act as amended, and the Employer and/or Carrier shall be forever relieved and discharged of any and all future liability for medical expenses of the Employee in accordance with the provisions of the said Act.
(R. 55-57).
The deputy commissioner approved the joint stipulation pursuant to section 440.20(1), Florida Statutes (1981), after hearing. The order, dated August 11, 1982, provided that "upon payment of the lump sum so stipulated, the liability of the employer for medical benefits on account of the subject injury shall be fully discharged."
A second order, entered the same day, approved the payment of $20,384 to claimant as the "total payment of compensation benefits for permanent total disability until the expiration of employee's life." The agreement between claimant and the employer and carrier for lump-sum payment of total disability benefits was set forth as an oral stipulation by the attorney for the employer and carrier:
The parties have agreed that the sum of $20,384, less a sum of $140, which was advance payments which the carrier took credit for, is a reasonable  is the amount of permanent total benefits to which she's entitled during her life expectancy as reflected by the mortality tables.
So therefore the carrier is willing to pay her this lump sum permanent total benefits based upon her life expectancy and the mortality tables.
In addition, the parties have agreed that upon the  if you approve this and approve the other document, which is a joint petition stipulation concerning the future medical benefits, that it is not contemplated that any further benefits will be coming from Liberty Mutual Insurance Company on behalf of the employer except any outstanding mileage expense or medical bills which have not been reimbursed or paid as of today.
(R. 41-42).
The deputy commissioner, after confirming that the claimant understood the terms and was in agreement, ruled that "the payment of the above prescribed compensation *78 is the total amount of compensation due the Employee." The order also stated that "said final payment represents the total payment of compensation benefits for permanent total disability until the expiration of Employee's life." The Florida Workers' Compensation Trust Fund was not a party to these settlement agreements.
Prior to the approval of the joint stipulation, claimant had been receiving supplemental benefits, pursuant to section 440.15(1)(e)1, Florida Statutes (Supp. 1974), from the Workers' Compensation Trust Fund. On September 1, 1982, the Division of Workers' Compensation informed claimant that her supplemental benefits would be terminated because of the "washout" created by the joint stipulation.[1] Following reconsideration at the request of claimant's attorney the Division resumed payment of supplemental benefits to claimant retroactive to August 11, 1982, but again terminated payments on April 5, 1984. Claimant then made a claim against the Fund for reinstatement of the benefits. The rejection of that claim is the subject of the appealed order, which contains the following relevant findings:
However, in reading the agreements of the parties, although the parties did not use the standard terminology used in `washout' settlements of claims, that the combined effect of the two agreements does arrive at the same end result. The order entered in one of the agreements provided that, `... That upon payment of the lump sums so stipulated, the liability of the employer for medical benefits on account of the subject injury shall be fully discharged... .' The other order entered provided that `Said final payment represents the total payment of compensation benefits for permanent total disability until the expiration of employee's life. All total temporary compensation has previously been paid.'
It appears that the agreements entered into are an attempt to obtain the immediate monetary benefits of a `washout' settlement, and on the other hand, still maintain the right to receive continued payments of supplemental benefits. It is not within the province of the undersigned to comment upon the wisdom of those provisions contained in Section 440.15(1)(e)1, Florida Statutes, which provide that the supplemental benefits shall be terminated upon the entry of a `washout' settlement, however, the undersigned does believe that it is his duty to rule on this case in accordance with the intent of that provision. Therefore, when considering the overall effect of the agreements entered into by the parties, and the apparent intent of Section 440.15(1)(e)1, Florida Statutes, the Fund did have the right to terminate the claimant's supplemental benefits.
We concur with the deputy commissioner that the joint petition stipulation concerning medical benefits and the oral stipulation regarding permanent total disability benefits constitute a washout settlement of Shipp's claim, which also terminated claimant's right to continue receiving supplemental benefits. Section 440.15(1)(e)1, Florida Statutes (1981), provides:
In case of permanent total disability resulting from injuries which occurred subsequent to June 30, 1955, and for which the liability of the employer for compensation has not been discharged under the provisions of s. 440.20(12), the injured employee shall receive from the division additional weekly compensation benefits equal to 5 percent of the injured employee's weekly compensation rate, as established pursuant to the law in effect on the date of his injury, multiplied by the number of calendar years since the date of injury and subject to the maximum weekly compensation rate set forth in s. 440.12(2). Such additional benefits shall be paid out of the Workers' Compensation Administration Trust Fund. This applies to payments due after October 1, 1974.
*79 In this case, the carrier and claimant agreed that liability for medical benefits was "fully discharged" and "final total" payment of compensation for permanent total disability was made. The deputy commissioner therefore properly concluded that the parties intended to discharge all liability in exchange for lump-sum payment and that no modification should be allowed under section 440.28, Florida Statutes (1981). See section 440.20(12)(a), Florida Statutes (1981), and J.F. Hoff Electric Co. v. Powell, 10 F.L.W. 2624 (Fla. 1st DCA Nov. 22, 1985).
Claimant argues that section 440.15(1)(e)1 applies only to "washouts" occurring between June 30, 1955, and October 1, 1974. She contends that when the maximum compensation rate was changed from an amount fixed by statute to an amount based on a percentage of the statewide average weekly wage the legislature intended to preclude supplemental payments for recipients who had entered into a "washout" prior to October 1, 1974, because the carrier could not constitutionally be required to pay a higher rate. We can find no support for this interpretation. Claimant's argument is inconsistent with the purpose of supplemental benefits, which is to protect recipients of periodic benefits from the long-term effects of inflation that reduce the value of a fixed amount of benefits. The effects of inflation are the same irrespective of the method of calculating supplemental benefits. Once a lump-sum payment is authorized and received pursuant to section 440.20, a claimant has the option to invest the funds and offset the effects of inflation so that the purpose of supplemental benefits is satisfied.
We note that lump-sum payments are not a favored remedy. See 440.20(12)(a), Florida Statutes (1981). Supplemental benefits are intended as an incentive to continue periodic payments and avoid the potential for inflation to diminish the value of such payments. Once a claimant chooses to accept a lump-sum payment, however, the right to receive supplemental benefits is terminated.
Claimant also argues that she relied upon a decision of the Division in a prior case in deciding to settle her claim because she expected the supplemental benefits to continue. Documents were introduced at hearing concerning an unrelated 1975 case where the Division failed to terminate supplemental benefits after a settlement. Claimant argues that the Division's present position constitutes a change in policy or rule to her prejudice. We find no competent evidence to support claimant's argument that the Division had any formal policy or that it has improperly engaged in a change of policy.
Lastly, claimant argues that the Division's preliminary reinstatement of her benefits between August 11, 1982, and April 5, 1984, constitutes an estoppel and prevents the Division from again terminating those benefits. Claimant, however, cannot show that the Division's reinstatement of benefits caused her to act in detrimental reliance upon receipt of those benefits since she agreed to the washout long before that occurred. See Greenhut Construction Co. v. Henry A. Knott, Inc., 247 So.2d 517 (Fla. 1st DCA 1971).
We also find that the deputy commissioner was correct in denying attorney's fees to claimant. The Workers' Compensation Administrative Trust Fund is not liable for penalties, interest, or attorney's fees as the result of nonpayment of supplemental benefits. Knight v. City of Miami, 421 So.2d 21 (Fla. 1st DCA 1982).
AFFIRMED.
WENTWORTH and NIMMONS, JJ., concur.
NOTES
[1] A "washout" is a settlement which disposes of both compensation and medical benefits. See Westinghouse Electric Supply Co. v. Reagan, 159 So.2d 222 (Fla. 1964).